UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF WASHINGTON, et al., <br><br> Defendants. | Case No. C70-9213 RSM <br><br> Subproceeding No. 89-3-12 (Shellfish) <br><br> ORDER ON AMENDED PETITION FOR REVIEW |

## I.  INTRODUCTION

The Skokomish Tribe ("Skokomish") initiated this subproceeding to resolve disputes with Gold Coast Oyster, LLC ("Gold Coast") under the Revised Shellfish Implementation Plan ("SIP").[1] Dkt. #1.[2] Skokomish alleged that Gold Coast had violated the SIP by failing to disclose information, imposing 'access controls' on tidelands, improperly rejecting survey and population estimates of shellfish, and failing to develop harvest plans. *Id.* at ¶ 1.2. Because of overlapping usual and accustomed fishing grounds, Skokomish also joined the Jamestown S'Klallam Tribe

---

[1] Dkt. #14,331 in Case No. C89-sp-03RSM; Dkt. #17,340 in Case No. C70-9213RSM.

[2] Dkt. #20,980 in Case No. C70-9213RSM.

ORDER – 1

and Port Gamble S'Klallam Tribe (collectively, "S'Klallam"), the Lower Elwha Klallam Tribe ("Lower Elwha"), and the Suquamish Tribe ("Suquamish") as affected tribes.[3] *Id.* at ¶¶ 2.9–2.13.

As a matter arising under the SIP, the dispute was heard and determined by the Honorable David W. Christel, United States Magistrate Judge. *See* SIP § 9.1.1 ("[T]he Magistrate Judge will hear and determine disputes arising under the implementation plan."); *See* Dkt. #40[4] (order referring matter to Judge Christel).[5] Following extensive proceedings before him, Judge Christel entered an Amended Order on Request for Dispute Resolution (Dkt. #142[6]) and a Permanent Injunction (Dkt. #143[7]), resolving the matter. S'Klallam now seeks the undersigned's review, raising three objections to Judge Christel's resolution. *See* SIP § 9.1.4 (permitting "petitions for review" to a United States District Judge, to "be considered pursuant to the procedures established in Federal Rule of Civil Procedure 72(b)"). Having reviewed the matter de novo, the Court affirms and adopts Judge Christel's prior orders.

## II.    BACKGROUND

Under the Stevens Treaties, tribes retained the "right of taking fish, [including shellfish,] at all usual and accustomed grounds and stations . . . in common with" the State of Washington. *United States v. Washington*, 157 F.3d 630, 638 (9th Cir. 1998). As to shellfish, the tribes agreed

---

[3] Several additional parties participated as interested parties. Dkt. #14 (Squaxin Island Tribe ("Squaxin")); Dkt. #15 (State of Washington (the "State")); Dkt. #20 (Swinomish Indian Tribal Community ("Swinomish")); Dkt. #21 (The Tulalip Tribes ("Tulalip")); Dkt. #78 (Nisqually Indian Tribe ("Nisqually")).

[4] Dkt. #21,320 in Case No. C70-9213RSM.

[5] Prior to Judge Christel presiding over the matter, it was before the Honorable Karen L. Strombom, United States Magistrate Judge. *See* Dkt. #11 (first order referring matter).

[6] Dkt. #22,187 in Case No. C70-9213RSM.

[7] Dkt. #22,188 in Case No. C70-9213RSM.

ORDER – 2

that they would not harvest any portion of the tribal share from "beds staked or cultivated by citizens" of the state of Washington. *Id.* at 639. Where private enhancements are made to natural shellfish beds[8] to increase production, tribes are entitled only to half "of the pre-enhanced sustainable shellfish production." *Id*. at 653. Tribes are not entitled to any portion of the yield attributable to the private enhancements. *Id.*

This allocation requires extensive coordination between interested parties, all of which occurs under the provisions of the SIP. Growers are to provide written notice to affected tribes of their intent to enhance a natural bed or create a new artificial bed. SIP § 6.3. This allows affected tribes, having a right of access under the SIP, to establish the existence and scope of any natural bed prior to enhancement activities. Similarly, where tribes plan to harvest from privately owned tidelands, the SIP provides for population surveys, prior notice to property owners, and dispute resolution so that the parties can agree on the tribal share. SIP § 7.

Here, Skokomish maintained that Gold Coast, on approximately fifty privately-owned parcels, had violated the SIP, overharvested enhanced and natural beds, and acted to obscure its violations. S'Klallam, feeling similarly aggrieved, supported Skokomish's efforts throughout the proceeding.[9] After trial, Judge Christel found that Gold Coast had violated the SIP by providing deficient notice of activities taken to enhance natural beds and establish artificial beds. This, combined with actions to interfere with the tribes' right of access, prevented the tribes from having the opportunity to establish the natural bed population and harvest their tribal share:

---

[8] A "natural bed" is one that is "able to support commercial livelihood on a sustainable basis." SIP § 6.

[9] The Court notes that S'Klallam attempted to pursue its own claims for damages on the eve of trial. Dkt. #142 at 4. Upon Gold Coast's objection to certain evidence at trial, the Court struck any such claims. *Id.* at 4–6. S'Klallam does not challenge that ruling. The parties do not address whether S'Klallam may appropriately pursue this action. On account of the Court's ruling, it need not consider the issue.

ORDER – 3

> On notice of the Tribes' treaty rights . . ., Gold Coast took actions that caused a loss of opportunity for the Tribes. Thus, the Tribes have shown, by a preponderance of the evidence, that Gold Coast did not provide the Tribes with adequate opportunities to inspect and/or survey the Disputed Tidelands and, thus, impeded the Tribes' abilities to exercise their Treaty Rights.

Dkt. #142 at 10.

Judge Christel awarded the tribes injunctive relief assuring that Gold Coast would not continue to impede the tribes' exercise of their treaty rights in the future. Dkt. #143. However, Judge Christel rejected S'Klallam's argument that a "loss of opportunity" required an award of compensatory damages and found that the tribes had presented insufficient evidence upon which to award compensatory damages. *Id.* at 15–16; *see also id.* at 23 ("In sum, the evidence the Tribes provided . . . is speculative regarding the number of shellfish harvested by Gold Coast on any particular tideland in Hood Canal."). Much of Judge Christel's order explored the evidence presented and explained why the evidence was inadequate proof upon which to award compensatory damages. *Id.* at 15–29.

S'Klallam now seeks review, arguing that Judge Christel "(1) misplaced the initial burden despite clear misconduct by Gold Coast; (2) overruled the mandate for harvest plans to be in place prior to harvest; and (3) provided no repayment for loss of treaty fishing opportunity." Dkt. #150[10] at 5. Skokomish did not take a position on the petition for review. Squaxin Island Tribe and Nisqually Indian Tribe, participating as interested parties, responded to S'Klallam's petition for review in general support of Judge Christel's decision. Dkt. #155.[11] Similarly, the State of Washington, participating as an interested party, supported Judge Christel's decision.

---

[10] Dkt. #22,214 in Case No. C70-9213RSM.

[11] Dkt. #22,220 in Case No. C70-9213RSM.

ORDER – 4

Dkt. #158.[12] For its part, Gold Coast responded that it had ceased operations[13] and that, while it lacked resources to more fully respond to S'Klallam's arguments, Judge Christel's orders "are all amply supported by the law and the evidence" and should be affirmed. Dkt. #157.[14]

### III. DISCUSSION

#### A. Legal Standard

Under the SIP, S'Klallam's petition for review "shall be considered pursuant to the procedures established in Federal Rule of Civil Procedure 72(b)." SIP § 9.1.4. Rule 72(b) requires that upon objections to a magistrate judge's disposition, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b).[15] The "Court is not required to conduct 'any review at all . . . of any issue that is not the subject of an objection." *Ventana Med. Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 709 F. Supp. 2d 744, 747–48 (D. Ariz. 2010), aff'd, 454 F. App'x 596 (9th Cir. 2011) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). Similarly, objections which are equivocal, ambiguous, or merely refer to previous briefing are "too general to be valid." *United States v. Washington*, 626 F. Supp. 1405, 1492 (W.D. Wash. 1985) (reporting the Court's April 25, 1984 Order). In the normal course, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

---

[12] Dkt. #22,223 in Case No. C70-9213RSM.

[13] Gold Coast has also been subject to state regulatory action resulting in "a 2,544-month suspension of Gold Coast operators' license." Dkt. #150 at 4. *See also* Dkt. #158 at 6 n.7.

[14] Dkt. #22,222 in Case No. C70-9213RSM.

[15] The Court does not find it necessary to consider whether the SIP's invocation of Rule 72(b)'s procedures includes review de novo. No party has opposed review de novo. The Court has reviewed the record de novo and finds that any distinction is unnecessary to its resolution of the petition for review.

ORDER – 5

**B. De Novo Review, with the Benefit of S'Klallam's Briefing, Does Not Identify Error**

S'Klallam seeks review of three "errors" in Judge Christel's order. *See* Dkt. #150 at 5. The Court, however, finds that S'Klallam's first and third issues are interrelated and best considered together. So combined, S'Klallam's primary objection is that Judge Christel did not require "repayment for loss of treaty fishing opportunity." *Id.* Rather, Judge Christel found that on the evidence presented "the Tribes have not shown Gold Coast harvested the Tribes' treaty share of shellfish." Dkt. #142 at 29. S'Klallam, however, argues that the failure of its evidence was a result of Gold Coast's control and manipulation of the necessary evidence. Dkt. #150 at 9–10. Requiring the tribes to prove that Gold Coast harvested more than 50% of the natural beds' "sustainable harvest yield," S'Klallam maintains, shifted the burden of proof from the grower to the tribes.

The Court does not find any error and agrees with Judge Christel's analysis. "It is 'one of the most basic propositions of law . . . that the plaintiff bears the burden of proving [its] case, including the amount of damages.'" *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir. 2018) (quoting *Faria v. M/V Louise*, 945 F.2d 1142, 1143 (9th Cir. 1991)). Judge Christel did not conclude that compensatory damages could not be awarded. As S'Klallam itself acknowledges, "[i]t would have been proper for [Judge Christel] to accept all the Tribes' expert conclusions and evidence as factual, but [he] declined." Dkt. #150 at 14. This was not error, but a failure of proof.[16]

S'Klallam relies heavily on the Ninth Circuit's explanation that it is shellfish growers who have the burden to "demonstrate what portion of their harvest is due to their labor, as

---

[16] *C.f. Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 871–72 (9th Cir. 2017) (noting the "distinguishing feature of compensatory or actual damages is that they serve 'to compensate for a *proven* injury or loss'" and contrasting with nominal damages "awarded to vindicate rights").

ORDER – 6

1 opposed to what portion would exist absent the [g]rower's enhancement." *Washington*, 157 F.3d

2 at 653; *see also* SIP § 6.1.3. ("The burden of proof whether a bed is artificial, and the amount of

3 sustainable shellfish production that would exist absent a Grower's and prior Growers' current

4 and historic enhancement/cultivation activities, shall be on the Growers."). But that burden

5 applies in a context far different from establishing entitlement to compensatory damages as

6 equitable relief for violations of the SIP. S'Klallam points to nothing that gives any indication

7 that the principle is appropriately applied here.

8     S'Klallam's better argument is that "[t]he law of the case supports the S'Klallam position

9 that *the Grower* must be able to provide accurate information about the actual amount of harvest

10 taken from the tideland, and any lack of clear documentation should create a negative inference

11 of overharvest, if anything." Dkt. #150 at 9 (emphasis in original) (citations omitted). Putting

12 aside the legal question, S'Klallam's argument collapses because S'Klallam never sought any

13 such negative inference and has not objected to any portion of the record where Judge Christel

14 denied such a request.

15     Perhaps tellingly, S'Klallam never provides an explanation of what compensation should

16 have been provided. *Id.* at 7 n.4 (noting that tribes' "'loss of opportunity' is . . . incapable of

17 precise quantification"). S'Klallam's objection is with Judge Christel's weighing of the evidence

18 presented. But the Court's de novo review leads it to the same reasoned conclusions as Judge

19 Christel. Even if the Court may award damages, the record is insufficient to allow the Court to

20 set an accurate measure of damages supported by the record.

21     S'Klallam additionally asserts that Judge Christel was incorrect in concluding that harvest

22 of shellfish could occur before the tribes agreed to a harvest plan with a grower or property owner.

23 *Id.* at 10–13. The Court finds the argument wholly irrelevant. Judge Christel's permanent

24 injunction already requires "a harvest plan prior to" any harvesting by Gold Coast. Dkt. #143 at

ORDER – 7

§ II.2.d (p. 5).  And, the issue does not touch the Court's consideration of whether equitable relief should include compensatory damages in this case because any such claims would still fail for insufficient proof of damages.  *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) ("The historic purpose of equity is to 'secur(e) complete justice.'") (citing *Brown v. Swann*, 9 L.Ed. 508 (1836); *Porter v. Warner Holding Co.*, 328 U.S. 395, 397–398 (1946)).  Regardless, S'Klallam fails to raise a compelling legal challenge to Judge Christel's analysis or point to any provision of the SIP that is contrary to Judge Christel's conclusion.  Following the Court's de novo review, the Court adopts Judge Christel's analysis.

### IV. CONCLUSION

Accordingly, having reviewed the petition for review, the related briefing, declarations and exhibits in support of the briefing, and the remainder of the record, and having conducted a de novo review, the Court finds and ORDERS:

1. S'Klallam's Amended Petition for Review – Appeal from Magistrate Order to District Court (Dkt. #150) is DENIED.
2. The Court ADOPTS and AFFIRMS Judge Christel's Order (Dkt. #142).
3. This matter remains REFERRED to Judge Christel for resolution of any remaining issues.

Dated this 2nd day of September, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 8